NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-303

GEOFF R. MACKAY

vs.

DEBORAH L. FORD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Deborah L. Ford (wife), the former spouse of Geoff R. Mackay (husband), appeals from a judgment entered by a judge of the Probate and Family Court on the wife's complaint for contempt.  The wife contends that portions of the judgment are based on an erroneous interpretation of the parties' separation agreement (agreement).  Specifically, she argues that the judge erred in (1) concluding that the agreement is ambiguous and therefore allows alimony payments related to certain stock options to be made upon liquidation rather than upon vesting, and (2) declining to hold the husband in contempt for failing to pay alimony based on the value of the stock options upon vesting.  Although we conclude that the judge did not abuse her

discretion in declining to find the husband in contempt, we agree that the judge erred in her interpretation of the agreement and remand the case for a redetermination of the husband's alimony arrears owed to the wife from the vested stock options.

Background. The parties were married in 1999. In 2013, the husband filed a complaint for divorce. In 2016, the parties signed a separation agreement which was incorporated into the judgment of divorce nisi. The alimony-related provisions of the agreement did not merge with the divorce judgment, but rather survived and retained independent contractual significance. The agreement provided in relevant part that the husband would pay the wife annual alimony equal to a percentage of his "gross income," pursuant to a self-executing formula in which the applicable percentage decreased over time and eventually terminated. The agreement defined the husband's "gross income" to include:

> "the following forms of compensation that the Husband receives by reason of his employment: his gross salary, draw, wages, commissions, and cash bonuses or any compensation paid to him in the form of stock options/RSU's or other equity incentive(s) . . . . For purposes of determining gross income, any compensation paid in the form of stock options/RSU's or other equity incentive shall be deemed 'received' and thus includible in the Husband's 'gross income' for purposes of calculating alimony upon vesting if no further event is needed for the Husband to liquidate the asset and, if applicable, the board endorses such liquidation, or, otherwise upon there being, if ever, a liquidating event . . ." (emphasis added).

2

At the time of the divorce, the husband worked for the company AvroBio, Inc. (AvroBio). AvroBio granted him approximately one million restricted stock units (RSUs) at various times during his employment. In 2023, the husband sold AvroBio RSUs for $425,212.04.

In March 2022, prior to the husband's liquidation of his AvroBio RSUs, the wife filed a complaint for contempt alleging, among other things, that the husband did not provide her with required information related to his AvroBio RSUs and owed her alimony because the RSUs had vested. Following a three-day trial, the judge found the husband "in contempt for disobeying the Agreement's command to provide the required documentation of his AvroBio stock options but [] not . . . in contempt with respect to any associated alimony obligation" because, before trial, the husband paid the wife alimony arising from his receipt of the stock options. As such, the issue became not whether the husband paid alimony related to his AvroBio RSUs, "but rather whether [the husband] paid [the wife] the appropriate amount of alimony once the options were 'received.'"

The judge concluded that the husband was not in violation of the provision of the agreement pertaining to when the RSUs were "deemed 'received,'" as that provision was not a "clear and unequivocal command." The judge reasoned that "the provision

3

provides no clear order as to which date controls" and there are "several reasonable options by which [the husband] could determine a valuation date for purposes of calculating his associated alimony obligation." See Jones v. Jones, 101 Mass. App. Ct. 673, 687-688 (2022). Because the husband paid the wife the required percentage of his "gross income" from the RSUs value "on his chosen valuation date, i.e., the date of liquidation," the judge concluded that there was no basis for a judgment of contempt for failure to pay. In order "to thwart future litigation on the point," the judge ordered, in Paragraph 2 of the contempt judgment, that henceforth, the husband's alimony obligation with respect to RSUs would be calculated based on the date the husband chose to liquidate them.

Discussion. On appeal, the wife contends that the judge erred by concluding that the agreement was ambiguous and by allowing the value of the husband's "stock options/RSU's" to be determined at the time he chose to liquidate them, rather than when they vested. We agree.

"Whether a separation agreement is ambiguous is a question of law." Jones, 101 Mass. App. Ct. at 681. "The mere existence of the parties' disagreement does not make the language ambiguous." Browning-Ferris Indus., Inc. v. Casella Waste Mgt. of Mass., Inc., 79 Mass. App. Ct. 300, 307 (2011). "To answer the ambiguity question, the court must first examine the

4

language of the contract by itself . . . ." <u>Bank</u> v. <u>Thermo Elemental Inc</u>., 451 Mass. 638, 648 (2008). We construe the agreement based on "a fair construction of the contract as a whole and not by special emphasis upon any one part" (citation omitted), <u>Kingstown Corp</u>. v. <u>Black Cat Cranberry Corp</u>., 65 Mass. App. Ct. 154, 158 (2005), while recognizing that "every word is to be given force so far as practicable" (citation omitted), <u>MacDonald</u> v. <u>Hawker</u>, 11 Mass. App. Ct. 869, 872-873 (1981).

The key provision of the agreement requires the husband to pay the wife a percentage of the value of his RSUs when they are "received," which is specified as occurring "upon vesting if no further event is needed for the Husband to liquidate the asset." Although the agreement does not specify every possible "further event" that might delay the husband's ability to liquidate his RSUs, this does not create ambiguity.[1] Accordingly, the judge's

---

[1] If anything, the lack of specificity creates an issue of proof. Here, the record does not show that anything that might be characterized as a further event was in fact required for the husband to liquidate his AvroBio RSUs after they vested. The husband cites to a statement of his own that he is generally bound by certain Securities and Exchange Commission (SEC) insider trading rules, but he does not cite any particular rule and there is no evidence that liquidation of the AvroBio RSUs upon receipt was actually restricted by those rules. The husband also testified that he did not have board approval to liquidate the options, but did not testify that such approval was a requirement of liquidation, and it is not stated as a requirement in any of the myriad documents introduced at trial. It may be that actual sale of stock by an insider may in some circumstances have an effect on stock price, but that has nothing to do with the terms of the parties' separation

5

decision to reform the agreement to allow valuation of the RSUs upon liquidation overlooks the parties' express choice to treat RSUs as received "upon vesting," except if some condition precedent to permissible liquidation has yet to occur.  See MacDonald, 11 Mass. App. Ct. at 872 ("[i]t is to be presumed that parties employ all the provisions and phrases of a written contract with the purpose that each has an appropriate meaning").[2]

Furthermore, because at the time of the agreement the parties anticipated that the husband would be granted AvroBio RSUs, the agreement also requires the husband to provide information "to verify the number and strike price of such options/RSU's and the vesting schedule, terms and conditions, and he shall also provide [the wife] with the grant award notification (if any) and relevant stock option agreement and/or plan."[3]  There would be little reason to include a provision

---

agreement.  In any event, disclosures stating, for example, that these are regular distributions of options and that sale will always be undertaken upon receipt in order to allow payment of alimony (even when it may not be necessary) can ensure that insider sales like these do not affect a company's stock price.

[2] We note that the agreement does not require the husband to actually liquidate the RSUs on the date of vesting if he has other funds from which to pay his alimony obligation.  It is their value that is included in his compensation.

[3] As noted supra, the judge found the husband in contempt for failing to provide the wife with the information required under this provision.

allowing the wife to verify the schedule, terms, and conditions of the vesting of the AvroBio RSUs if they were not to be included in the husband's gross income until whenever he chose to liquidate the assets.

Because the language is clear that, in the absence of circumstances not present here, the RSUs were to be treated as part of the husband's gross income upon vesting, the judge's interpretation was erroneous. See Balles v. Babcock Power Inc., 476 Mass. 565, 571 (2017) ("[W]hen the language of a contract is clear, it alone determines the contract's meaning").

Nevertheless, the judge did not abuse her discretion in declining to find the husband in contempt for having paid alimony based on the value of the RSUs upon liquidation. See Jones, 101 Mass. App. Ct. at 688 ("We review the judge's ultimate finding [on the complaint for] contempt for abuse of discretion" [citation omitted]). "[T]o constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command" (citation omitted). Birchall, petitioner, 454 Mass. 837, 851 (2009). Such disobedience must be shown by clear and convincing evidence. See id. at 853. The evidence at the hearing regarding what qualified as a "further event," and whether the requirement of consent by the board was "applicable," was muddled at best. See note 1, supra. In other words, "there was a clear and unequivocal order, but not an

7

undoubted disobedience."  Voorhis v. Relle, 97 Mass. App. Ct. 46, 54 (2020).  See Wooters v. Wooters, 74 Mass. App. Ct. 839, 844 (2009) (husband's good faith "disagreement or misunderstanding of [how to calculate his alimony obligation] d[id] not constitute clear and undoubted disobedience").  The judge's conclusion that the wife did not show clear and convincing evidence of clear disobedience was within the range of reasonable alternatives and, therefore, not an abuse of discretion.  See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Conclusion.  Paragraph 2 of the contempt judgment dated October 15, 2024, is vacated.  The case is remanded for redetermination of the husband's alimony arrears owed to the wife as of the date his RSUs vested, consistent with the parties' separation agreement dated April 1, 2016.  The contempt judgment is otherwise affirmed.[4]

So ordered.

By the Court (Rubin,
  Massing & Toone, JJ.[5]),

Clerk

Entered:  July 8, 2026.

---

[4] The wife's request for attorney's fees in connection with this appeal is denied.

[5] The panelists are listed in order of seniority.

8